# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY JEAN COFFMAN,<br><br>             Plaintiff,<br><br>     v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>             Defendant. | 1:11-cv-00652 GSA<br><br>**ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT**<br><br>(Docs. 13 and 17). |

## **BACKGROUND**

Plaintiff Mary Jean Coffman ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her applications for disability and supplemental security income benefits pursuant to Titles II and XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were

submitted, without oral argument, to the Honorable Gary S. Austin, United States Magistrate Judge.[1]

**FACTS AND PRIOR PROCEEDINGS[2]**

Plaintiff applied for disability insurance benefits and supplemental security income benefits in November 2007.  *See* AR 126-136.  The applications were denied initially and on reconsideration.  AR 66-70, 74-79.  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and a hearing was held before ALJ Patricia L. Flierl on August 26, 2009.  AR 80-81, 86-101.  ALJ Flierl issued a decision denying benefits on January 14, 2010.  AR 10-18.  On February 24, 2011, the Appeals Council denied review.  AR 2-4.

**Hearing Testimony**

The hearing before ALJ Flierl on August 26, 2009, was held in Fresno, California.  Plaintiff was present and testified. She was represented by attorney Melissa Proudian. Vocational Expert ("VE") Tom Dashlett also testified.  AR 19-51.

*Plaintiff's Testimony*

Plaintiff is thirty-two years old. She lives with her husband and two of her three children at a home in Clovis, California. At five feet tall, Plaintiff weighs 112 pounds and is right handed. AR 21-23.  She is unable to work because of a heart problem (sinus tachycardia), chronic migraines, and depression. AR 29, 43.

Plaintiff completed the eleventh grade. She never received a GED or diploma, however, she did complete a certified nursing assistant class in 2002. AR 23-24. She last worked in April of 2004 as a certified nursing assistant at Kaweah Hospital. AR 24.

Prior to working as a Certified Nursing Assistant, Plaintiff worked full time at a pizzeria for nine months. During six of the nine months, she held a management position. AR 26-27. In this role, she took orders, delivered drinks and pizzas to customers, ordered supplies, and conducted interviews. AR 26-27.  As a manager, Plaintiff lifted no more than approximately ten

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge.  *See* Docs. 9 & 10.

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

pounds. AR 26.  Before working at the pizzeria, Plaintiff was employed for less than three months at Rocky Mountain Chocolate Factory on a full time basis. AR 27. She also worked at Clingan's Junction Restaurant between the ages of eighteen and twenty-one. AR 28.

Plaintiff is unable to work currently because her heart condition causes her to become dizzy and she passes out. AR 28. When she experiences heart problems, Plaintiff's heart begins to race, she sometimes gets dizzy, and she breaks out in sweats. AR 29. These symptoms can occur several times a day when she is just sitting or even sleeping, usually five to six days a week. AR 29, 45. The last time Plaintiff passed out from this condition was in 2008. AR 44. She does not grocery shop by herself because she always has her four-year-old autistic son with her. AR 34. Plaintiff is fearful she will have an episode and pass out, leaving her son alone without the ability to contact anyone. AR 34.

Plaintiff takes Atenolol and Midodrine for her heart condition. The medication makes her very sleepy, and she usually lays down for a nap after taking the pills. AR 30. Even after laying down for a couple hours, she still feels exhausted, dizzy, and light-headed. AR 31.

Plaintiff began seeing a cardiologist, Dr. Liu, in 2007. AR 32. She had an ablation performed in September of that year, where doctors "found an extra pathway" and cauterized it. AR 32.  Although she received treatment, Plaintiff alleges it was not effective. AR 32.  When asked if other treatment was available, Plaintiff responded that doctors could remove her sinus nodes, but it is not guaranteed to fix the problem, and could result in a pacemaker being necessary. AR 33. She visits her cardiologist three times a year, however as of the date of the hearing, it had been almost one year since her last visit. AR 43.

In addition to her heart problem, Plaintiff suffers from migraine headaches. AR 35. When experiencing a migraine, Plaintiff is awake and feels grouchy, nauseated, is bothered by light and noise, and gets blurry spots in her vision. AR 39. The migraines started at the age of sixteen and they occur two times per week and last from one to three days. AR 35, 38. Plaintiff takes Topamax and Darvocet to treat them. AR 35-36. She also goes to her neurologist about once every two months and receives injections of Cortisone and Lidocaine. Although the injections do not get rid of the headache, they alleviate some sore spots on her head. AR 36-37. She also gets

1  injections of Demerol or Dilaudid, which instantly relieves the pain but makes her sleep "[a]
2  good six hours." AR 37. When experiencing migraines, Plaintiff still must care for her children if
3  her husband is unavailable, but sometimes her brother or mother help her. AR 38-39.

4        Plaintiff also suffers from depression. She currently takes Celexa to treat the condition,
5  which is under control. AR 40. However, if she misses even one dose, her mood is adversely
6  affected. AR 40.

7        When Plaintiff feels ill, she can only concentrate for less than two hours. AR 41. On most
8  days however, she is able to cook, clean the house, and grocery shop with her husband on his
9  days off. AR 41-42. She has a California driver's license and operates a vehicle a "[c]ouple times
10 a week." AR 23. She does not drive often because of her heart condition. In the past, she hit a fire
11 hydrant when she was feeling light headed and disoriented. AR 33. Although her doctor has not
12 limited her driving, she does not feel comfortable doing it. However, on occasion, she will drive
13 her oldest child to school in the morning if her husband is unable to do so. AR 34.

14       ***VE Dashlett***

15       VE Dashlett identified Plaintiff's past relevant work as a waitress as semi-skilled with an
16 SVP[3] of three, light. AR 46. He also classified Plaintiff's past work as a certified nurses
17 assistant, semi-skilled with an SVP of four, medium, done heavy to very heavy. AR 46.

18       In the first hypothetical, the VE was asked to assume a hypothetical person of the same
19 age, educational background, and work history as Plaintiff, with the individual limited to
20 sedentary work and simple and repetitive tasks. This individual is also unable to climb, balance,
21 kneel, crouch or crawl, drive, or sit at a computer for a very long period of time. AR 46-47. VE
22 Dashlett indicated such an individual would be capable of work as an ampoule sealer, DOT
23 559.687-014, with 3,135 positions available in California. Additionally, the individual could
24 work as a loader of semi-conductor dies, DOT 726.687-030, with 2,790 positions available
25 statewide. AR 47. Finally, the individual could also perform the work of a stuffer, DOT 731.685-
26 014, with 6,012 positions available statewide. AR48.

---

28       [3]"SVP" refers to specific vocational preparation.

4

In a second hypothetical posed by Plaintiff's counsel, VE Dashlett was asked to assume the same hypothetical as the first one, except that this individual needed to lie down frequently during the day for rest periods. The VE indicated this person would be unable to work. AR 48.

**Medical Record**

The entire medical record was reviewed by the Court (AR 191-383), however, only those medical records relevant to the issues on appeal will be addressed below as needed in this opinion.

*Kaiser Permanente*

From January 2001 to September 2003, Plaintiff was seen at Kaiser Permanente for routine health check ups and common ailments. AR 233-265. During this time, she had one occurrence of a migraine, on November 2, 2001, and was referred to a headache clinic. AR 255-256.

Plaintiff was seen by Dr. Lively from May 2004 to October 2004.[4] AR 192-203. Plaintiff was pregnant during part of this time, and experienced repeated episodes of tachycardia associated with syncope, but it was noted that she was "doing fairly well." AR 193-194. Plaintiff wore a 30-day event recorder which revealed episodic sinus tachycardia. AR 194. Dr. Lively prescribed a low dose of Propanolol to control her heart, but Plaintiff never used it. AR 193-194. Just before her delivery, Plaintiff's "symptoms of tachycardia [were] fairly stable." AR 193. Dr. Lively recommended further studies and possible ablation therapy after her delivery. AR 192.

Plaintiff was also seen at Kaiser Permanente from November 2006 to July 2009. AR 204-221, 266–284, 285-383. From November 2006 to November 2007, she was treated for headaches three times and told to return within days if symptoms persisted, which she never did. AR 212-213, 215, 218. She was also seen for heart irregularity three times and agreed to undergo an ablation. AR 212-215. Conservative treatment was recommended for Plaintiff's sinus tachycardia. AR 212.

---

[4] It appears that Dr. Lively is not affiliated with Kaiser Permanente but is in private practice in Visalia, California.

Between July 2007 and February 2008, Plaintiff was examined for heart irregularity and migraines, as well as for routine medical tests and care. AR 266-284. She was seen three times for heart issues. AR 268-269, 270, 276-276. She had testing performed on her heart twice, with each test producing normal results. AR 270-271, 275-276. Conservative treatment was recommended for her sinus tachycardia. AR 269. During this period, Plaintiff was also seen three times for headaches. AR 267, 269, 278. She was treated and advised to return if symptoms persisted, which she did not do. AR 267, 278.

From February 2008 to July 2009, Plaintiff also received care for routine medical treatment and common ailments, as well as for migraines and heart abnormalities. AR 285-383. She was seen for sinus tachycardia on three occasions, but did not experience syncope during this period. AR 355, 373, 381. Plaintiff also received treatment for headaches nearly once a month and was typically given injections or other prescriptions and advised to return if symptoms did not get better within a few days. AR 314, 315, 319-321, 326-332, 335, 341-342, 351-352, 356, 359-360. She returned on two occasions for further treatment. AR 328-330. On some visits, it was noted that Plaintiff did well with the injections and that the headaches might be related to a prior infection or tension. AR 315, 320, 359-360. She was also treated for back pain from April 2008 to September 2008 and for depression. AR 316, 333, 343, 347-348, 368, 374, 376.

***Non-Examining Physicians***

Plaintiff's medical evidence was reviewed by Dr. George W. Bugg, M.D., a state agency medical reviewer, and on January 30, 2008, and he completed a "Physical Residual Functional Capacity Assessment." AR 222-229. He determined that Plaintiff could lift or carry twenty pounds occasionally, ten pounds frequently, that she could stand or walk for six hours and sit for six hours, and that her ability to push and pull was unlimited. AR 222-223. Dr. Bugg indicated that no postural, manipulative, or visual limitations existed, but that Plaintiff should avoid unprotected heights. AR 223-225. On May 12, 2008, Dr. Carmen I. De La Rosa, M.D., a state agency, non-examining physician, also reviewed Plaintiff's medical evidence and affirmed Dr. Bugg's previous assessment. AR 230-231. No significant objective findings were made. AR 230.

///

**ALJ Flierl's Findings**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 11-18. More particularly, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 1, 2004, the alleged onset date. AR 12. Further, the ALJ identified migraine headaches, chronic low back pain, sinus tachycardia, and depression as severe impairments. AR 12. Nonetheless, the ALJ determined that the severity of the Plaintiff's impairments did not meet or exceed any of the listed impairments. AR 13.

Based on her review of the entire record, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform sedentary work, but is restricted to repetitive tasks. She may not engage in prolonged computer use. Additionally, Plaintiff is unable to climb, balance, kneel, crouch, crawl, or drive. She may occasionally stoop. AR 14.

Given these limitations, the ALJ determined that Plaintiff was not capable of performing her past relevant work as a certified nurse's assistant or as a waitress. AR 16. However, the ALJ found that Plaintiff could work as an ampoule sealer, a loader of semi-conductor dies, or stuffer. AR 16. Therefore, the ALJ found Plaintiff was not disabled. AR 17.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n.10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).

This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that she has a physical or mental impairment of such severity that she is not only unable to do her previous work, but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

## DISCUSSION

Plaintiff claims that the ALJ's rejection of her testimony regarding her nonexertional limitations is not supported by substantial evidence. (*See* Doc. 13.) The Commissioner asserts the ALJ properly rejected Plaintiff's testimony and followed the correct legal standards when evaluating Plaintiff's credibility. (Doc. 17 at 7-11.)

**Applicable Legal Standards**

A two step analysis applies at the administrative level when considering a claimant's credibility. *Smolen v. Chater*, 80 F.3d at 1281. First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Id.* at 1281-1282. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his symptoms only if he makes specific findings that include clear and convincing reasons for doing so. *Id*. at 1281. The ALJ must "state which testimony is not credible and what evidence suggests the complaints are not credible." *Mersman v. Halter*, 161 F.Supp.2d 1078, 1086 (N.D.

Cal.2001), quotations & citations omitted ("The lack of specific, clear, and convincing reasons why Plaintiff's testimony is not credible renders it impossible for [the] Court to determine whether the ALJ's conclusion is supported by substantial evidence"); SSR 96-7p (ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight").

An ALJ can consider many factors when assessing the claimant's credibility. *See Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir.1997). These factors include examining the claimant's reputation for truthfulness, prior inconsistent statements concerning his symptoms, other testimony by the claimant that appears less than candid, unexplained or inadequately explained failure to seek treatment, failure to follow a prescribed course of treatment, claimant's daily activities, claimant's work record, or the observations of treating and examining physicians. *Smolen v. Chater*, 80 F.3d at 1284; *Orn v. Astrue*, 495 F.3d 625, 638 (2007). "An ALJ is not 'required to believe every allegation of disabling pain' or other non-exertional impairment." *Orn v. Astrue*, 495 F.3d at 635, citation omitted.

**Analysis**

The first step in assessing Plaintiff's subjective complaints is to determine whether Plaintiff's condition could reasonably be expected to produce the pain or other symptoms alleged. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). Here, ALJ Flierl found that Plaintiff's severe impairments of migraine headaches, chronic low back pain, sinus tachycardia and depression could reasonably be expected to produce the alleged symptoms. AR 12. However, Plaintiff's "statements concerning the intensity, persistence and limiting effects of those symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." AR 15. This finding satisfied step one of the credibility analysis. *Smolen v. Chater*, 80 F.3d at 1281-1282.

Because the ALJ did not find that Plaintiff was malingering, she was required to provide clear and convincing reasons for rejecting Plaintiff's testimony. *Smolen v. Chater*, 80 F.3d at 1283-1284; *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996) (as amended). When there is evidence of an underlying medical impairment, the ALJ may not discredit the claimant's

testimony regarding the severity of his symptoms solely because they are unsupported by medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991); SSR 96-7. Moreover, it is not sufficient for the ALJ to make general findings; she must state which testimony is not credible and what evidence in the record leads to that conclusion. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir.1993); *Bunnell*, 947 F.2d at 345-346.

In this case, the ALJ set out clear and specific reasons for finding Plaintiff not credible :

> The objective medical evidence fails to fully support the claim. None of claimant's treating physicians have imposed marked limitations on claimant's ability to function. Claimant's relevant medical records show that the treating physicals responded with limited and conservative treatment. Such treatment is inconsistent with the medical response that would be expected if symptoms and limitations were as severe as described by the claimant. Furthermore, claimant has admitted in her testimony that she does engage in activities of daily living such as taking care of her children, cooking, and cleaning. This suggests that she is more capable than alleged to work.
> As for the opinion evidence, the undersigned credits the State Agency (Exhibits 4F & 5F) based on supportablility with medical signs and laboratory findings; and, consistency with the record [sic].
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

AR 15.

Thus, the ALJ found Plaintiff was not credible because the medical evidence failed to support the claims, doctors prescribed conservative treatment, and Plaintiff was able to engage in activities of daily living. AR 15.

Plaintiff argues that contrary to the ALJ's findings, the objective evidence is consistent with her symptoms. (Doc. 13 at 12.). Specifically, Plaintiff contends that her headaches are severe and that her heart condition prohibits her from working. (Doc. 13 at 12.) However, a review of the record reveals that although Plaintiff suffers from these conditions, the ALJ's finding that these ailments are not as severe as Plaintiff alleges is supported by substantial evidence. For example, despite Plaintiff's heart condition and migraines, no doctor has limited her ability to perform certain tasks. AR 14. Furthermore, the medical record indicates that on numerous occasions, Plaintiff's cardiovascular examinations have been negative for

abnormalities, and in fact have indicated normal heart rate and rhythm, with no murmurs. AR 314, 319, 321, 332, 336, 341, 356, 365, 372, 374.

Plaintiff further argues that the ALJ's determination that she has only received conservative treatment is not supported by the record. (Doc. 13 at 13.) However, medical records reflect that Plaintiff's doctors recommended conservative treatment as therapy for her heart condition after her ablation procedure. AR 269. Even when getting injections for her headaches, Plaintiff is told to return if the treatment does not help, which on most occasions she does not do, suggesting that the treatment is effective. AR 325, 317, 320, 321, 325, 327, 342, 359. In fact, it was even noted that Plaintiff did well with the injections. AR 320. Further, on some occasions when Plaintiff received treatment for migraines, they were described as tension or sinus headaches. AR 315, 359. "Evidence of "conservative treatment" is sufficient to discount a claimant's testimony regarding the severity of an impairment." *Parra v. Astrue*, 481 F.3d at 751 citing *Johnson v. Shalala,* 60 F. 3d 1428, 1434 (9th Cir. 1995); *Tommasetti v. Astrue,* 533 F. 3d at 1039 (ALJ properly inferred that the claimant's pain was not as all-disabling as he reported in light of fact that the he did not seek an aggressive treatment program); *Meanel v. Apfel*, F. 3d 1111, 1113 (9th Cir. 1999) (subjective pain complaints properly discredited where claimant complained of intense pain but only received minimal and "conservative" treatment). *See also Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (impairments that are effectively controlled with medication are not disabling); *Tidwell v. Apfel*, 161 F.3d 599, 601-602 (9th Cir. 1998) (finding a mild or minor medical condition with all other tests reporting normal provides a basis for rejecting claimant's testimony of severity of symptoms); *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (inconsistencies between the record and medical evidence supports a rejection of a claimant's credibility; no medical treatment or a conservative level of medical treatment has been found to suggest a lower level of pain and functional limitations); 20 C.F.R. § 416.929 (objective medical evidence can be used in determining credibility; inconsistencies in evidence will support a rejection of credibility); SSR 96-7p (objective medical evidence is a useful indicator to assist in making a reasonable conclusion about credibility and the ability to function).

1     Plaintiff also alleges that the ALJ erred when analyzing her activities of daily living
2 because she cannot do her activities of daily living alone. (Doc. 13 at 13.)  However, an ALJ can
3 look to daily living activities as part of the credibility analysis.  *Burch v. Barnhart*, 400 F.3d 676,
4 680 (9th Cir. 2005); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Morgan v. Commissioner*
5 *of Social Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).  If a claimant is able to spend a
6 substantial part of his or her day engaged in pursuits involving the performance of physical
7 functions that are transferable to a work setting, a specific finding as to this fact may be sufficient
8 to discredit a claimant's allegations. *Morgan v. Commisioner of Social Sec. Admin.,* 169 F. 3d at
9 600.

    Here, while Plaintiff indicates that her husband does help her, she also testified that for the most part, she cooks, mops and vacuums the floors, grocery shops, and takes care of the children on her own. AR 39, 41- 42.  This supports the ALJ's finding that because Plaintiff is able to perform daily activities she is able to work more than she alleges. AR 15.  Additionally, although Plaintiff worries that she may faint, she has not passed out from her heart condition for several years.  AR 44, 213-214, 278, 355, 373 (Doc. 13 at 12.)  As such, there is substantial evidence in the record and the ALJ's finding is proper.  If an ALJ's credibility finding is supported by substantial evidence, the court "may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).  Moreover, although the evidence supporting an ALJ's conclusions might also permit an interpretation more favorable to the claimant, if the ALJ's interpretation was rational as it was here, the Court must uphold the ALJ's decision. *Burch v. Barnhart*, 400 F. 3d at 680-81.   Accordingly, the ALJ did not arbitrarily discredit claimant's testimony and the findings are free of legal error.

## **CONCLUSION**

    Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.  The clerk of this Court is DIRECTED to enter judgment in

favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff, Mary Coffman.

IT IS SO ORDERED.

Dated:  **July 19, 2012**                              **/s/ Gary S. Austin**
                                                                        UNITED STATES MAGISTRATE JUDGE